UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

William Edward Jones,

        Plaintiff,

                **Hon. Hugh B. Scott**

                12CV57A

       v.

                **Report &
Recommendation**

C.O. Tompkins et al.,

        Defendants.
_____

  Before the Court are the following motions: defendants' motions to dismiss, sever and change venue (Docket Nos. 12 & 19); plaintiff's motion to reinstate previously dismissed defendants (Docket No. 22) and plaintiff's motion for a preliminary injunction (Docket No. 26).

**Background**

  The plaintiff, William Edward Jones ("Jones") commenced this action claiming that the defendants violated his constitutional rights pursuant to 42 U.S.C. §1983.

  The plaintiff's first claim asserts that on April 19, 2010, while he was incarcerated at the Clinton Correctional Facility, Corrections Officers M. Tompkins, D. Uhler, Albert Prack and C. Morrow violated his rights when Tompkins allegedly filed a false misbehavior report against him. Jones claims that Uhler, Prack and Morrow denied him due process in connection with the administrative hearings related to that misbehavior report. The plaintiff alleged that Tompkins

1

wrote the misbehavior report against him (purporting that the plaintiff failed to provide a urine sample) because the plaintiff refused to become an informant. Jones claims that Morrow failed to provide Jones with pre-hearing assistance and that Hearing Officer Uhler denied Jones the opportunity to call witnesses and present evidence at the hearing. Jones was found guilty of the infraction and sentenced to 90-days in Special Housing Unit ("SHU"). Prack allegedly denied Jones' administrative appeal. Jones states that he filed a further appeal to the New York State Appellate Division, Third Department. (Docket No. 1 at pages 8-24). Documents submitted by the plaintiff reflect that the New York State Attorney General refused to submit a brief and represented that the administrative conviction had been administratively overturned (and the plaintiff's record expunged). Based upon this record, the Third Department dismissed the appeal as moot on February 28, 2011. (Docket No. 1 at pages 23-24).

The second claim raised by Jones asserts that he was transferred to the Southport Correctional Facility on August 13, 2010 and that from December 10, 2010 through February 28, 2011 he was denied adequate medical treatment. Jones claims that he was transferred to Southport to serve SHU time for two inmate infractions (one being the misbehavior report written by Tompkins). The plaintiff alleges that when he arrived at Southport, he was seen by Dr. Wesley Canfield and prescribed two medications for back pain and arthritis, Benadryl for allergies, and a fungal cream for a condition on his penis. Jones also states that he was treated for two cysts: one under his arm and one on his genitals. The plaintiff claims that on December 10, 2010, he accidentally hit the envelope in Nurse Clement's hand which contained pain medication ground into powder form. When the powder fell to the floor, Jones asserts that Clement became angry and ordered Jones to lick it up from the floor. Jones stated that he complied with this order.

The following day, according to Jones, Nurse DeLauro advised the plaintiff that he had "pissed someone off" and that because of that, he would no longer receive any medications. Jones alleges that Nurse Gorg and Nurse Northrup thereafter stopped at this cell "long enough to tell [him] that [he] was on the burn" and could not receive medication until he saw Dr. Canfield again. The plaintiff states that he then wrote grievances to Nursing Administrator John Von Hagen, Dr. Canfield, Deputy Superintendent William Hopkins, and spoke directly with the Superintendent [Patrick Griffin]. Jones alleges that Gorg then advised him that because he had written grievances, he would not be seen by Dr. Canfield for the remainder of his time at Southport. Jones claims that he put in for sick call every day between December 10, 2010 and February 28, 2011, but only received sick call twice. He asserts that he was provided only with 4 asprin and allergy medication for two days during that time period. Jones states that he was transferred to the Great Meadow Correctional Facility on February 28, 2011. According to Jones, upon arriving at Great Meadow, he was treated for all of the ailments described in his complaint. (Docket No. 1 at page 29). Jones states that he was provided with pain medications, a back brace, a tens unit, a cane, medication for his cysts and sent to a specialist for the infection on his penis. Jones states he was transferred back to Southport on November 4, 2011 and that he continued to receives his medicines and sick calls, but that Dr. Canfield and Nurse Gorg still refused to treat him.

Upon initial review, District Court Judge John T. Curtin dismissed the complaint as against Prack, finding that the plaintiff's allegations of Prack's denial of Jones' appeal of the disciplinary conviction resulting from Tompkins's misbehavior report was insufficient personal involvement to maintain the due process claim against Prack. (Docket No. 5 at pages 6-8).

Similarly, Judge Curtin dismissed the plaintiff's deliberate indifference claims against Griffin, Hopkins and Von Hagen on the grounds that their respective denials of Jones' grievances relating to his medical care did not constitute sufficient personal involvement to state a claim under §1983. (Docket No. 5 at page 8).

**Defendants' Motions to Dismiss, Sever and Change Venue**

The Defendants' argue that the plaintiff has not suffered an atypical hardship with respect to any penalty imposed based upon the disciplinary report filed by Tompkins, and thus, was not subject to the loss of a liberty interest. Therefore, the defendants assert that pursuant to Sandin v. Conner, 515 U.S. 454, 460 (1989), the plaintiff has failed to state a claim against the defendants relating to the administrative proceedings resulting from the Tompkins misbehavior report.[1] (Docket No. 12-1 at page 6).

An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (1995). The duration and conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship." See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.2004). While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the Sandin standard, Courts in this Circuit have held that punishment more severe than 30 days of keeplock was insufficient to establish a protected liberty interest. See

---

[1] At one point, the defendants stated that they were moving to dismiss this claims as against defendants Tompkins and Morrow (Docket No. 12-1 at page 2); in another place the defendants urge dismissal as against Morrow and Uhler. (Docket No. 12-1 at page 7).

Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir.1999) (101 days in normal Special Housing Unit conditions was not atypical or significant); Walker v. Caban, 2008 WL 4925204, at *11 (S.D.N.Y. Nov.19, 2008)(finding 90 day period in solitary confinement, without more, did not implicate a liberty interest under Sandin); Rivera v. Coughlin, 1996 WL 22342, at *5 (S.D.N.Y. Jan.22, 1996) (89 days in keeplock does not create a liberty interest). In Borcsok v. Early, 299 Fed.Appx. 76 (2d Cir. 2008), the Second Circuit held that a 101-day SHU sentence did not did not impose atypical hardships where the plaintiff did not complain of the conditions associated with this confinement. Borcsok, 299 Fed. Appx. at 78 citing Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir.1999)(finding that a 101-day confinement in a prison's SHU, while "doubtless unpleasant," is "not an 'atypical and significant hardship' " (quoting Sandin, 515 U.S. at 484)).

Here, while Jones was found guilty of the disciplinary infraction at Clinton, he was transferred to Southport to serve his SHU sentence. The plaintiff argues that he did not receive adequate medical care while he was serving his SHU sentence at Southport, and thus, he suffered atypical hardship. However, the allegations in the complaint do not assert that this deprivation was connected to the conditions inherent in SHU housing, but instead were the result of an altercation with Nurse Clement and other medical personnel at Southport. While Jones arrived at Southport on August 13, 2010, he states that his difficulties with respect to medical care did not begin until after he had been in Southport SHU for almost *four months*, when, on December 10, 2010, he had the altercation with Clement. The plaintiff has failed to demonstrate that any deprivation relating to his medical care was caused by his sentence to SHU as a result of the Tompkins' misbehavior report and associated proceedings. Moreover, the plaintiff acknowledges that he had also been found guilty of a separate unrelated disciplinary infraction for which he was

5

purportedly sentenced to one year in SHU. According to Jones, his 90 day sentence for the disciplinary infraction at Clinton [which was eventually administratively reversed] was "served together" with his much longer SHU sentence relating to the unrelated disciplinary infraction. (Docket No. 17 at page 6). It appears that Jones would have been in SHU during the time frame in question even if he had not been found guilty of the infraction alleged in the Tompkins' misbehavior report. Under these circumstances, the plaintiff has not demonstrated an atypical hardship resulting from the 90-day SHU sentence imposed by Uhler.

It is recommended that the complaint be dismissed to the extent it asserts due process claims against the defendants relating to the Tompkins' misbehavior report and the associated disciplinary proceedings. In light of the recommendation that the claim against the Clinton Correctional Facility defendants be dismissed in its entirety, the Court need not address the defendants' application to sever and transfer the claim to the Northern District of New York.

**Motion to Reinstate Previously Dismissed Defendants**

The plaintiff has filed a motion under Rule 60(b)(6) (Docket No. 22). seeking relief from the September 13, 2012 Screening Order (Docket No. 5) which dismissed the plaintiff's claims as against defendants Hopkins, Von Hagen, Griffin and Prack on the grounds that the complaint failed to state a claim against those defendants because it did not adequately demonstrate personal involvement by them. The plaintiff asserts that each of the four dismissed defendants were personally involved in the claimed deprivations of his rights. In light of the recommendation that the plaintiff's disciplinary hearing due process claim be dismiss, the Court

will consider the plaintiff's motion as to defendants Hopkins, Von Hagen and Griffin.[2] In his motion to reinstate, the plaintiff asserts that Von Hagen met with Jones, examined Jones and reviewed Jones' medical records prior to rendering a decision, which Superintendent Griffin purportedly relied upon in denying Jones' grievance relating to his medical care. (Docket No. 22 at page 4, ¶14; Exhibits B and C). With respect to Superintendent Griffin and Deputy Superintendent Hopkins, Jones asserts that he spoke directly with each of them on several occasions concerning his health care. (Docket No. 22 at page 4, ¶¶15-16).

Under Rule 60(b)(6), a district court may relieve a party from a final judgment for "any other reason that justifies relief." Lazare Kaplan Intern., Inc. v. Photoscribe Technologies, Inc., 714 F.3d 1289 (2d Cir. 2013). The Second Circuit has characterized Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case," but cautioned that the "reservoir is not bottomless." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir.2012). Relief under this provision has long been limited to "extraordinary circumstances." Ackermann v. United States, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950); see also CTS Corp. v. Piher Int'l Corp., 727 F.2d 1550, 1555 (Fed.Cir.1984) ( "Unless exceptional or extraordinary circumstances are shown, a Rule 60(b)(6) motion is generally not granted.").

Supervisory officials, such as Griffin and Hopkins, are generally not liable under §1983 based upon the denial of a grievance. See Vega v. Artus, 610 F.Supp.2d 185, 199 (N.D.N.Y.2009)(stating that facility superintendent's act of "referring [plaintiff's] letters to staff for investigation is not sufficient to establish [his] personal involvement"); Brooks v. Chappius,

---

[2] Even if the plaintiff's due process claim against Prack had not been dismissed upon initial review, the claim would be dismissed as against Prack in light of the finding that the plaintiff did not suffer an atypical hardship under Sandin and its progeny.

7

450 F.Supp.2d 220, 226 (W.D.N.Y.2006) ("Even the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement") (internal quotation marks omitted); Shell v. Brzezniak, 365 F.Supp.2d 362, 374 (W.D.N.Y.2005) ("the mere fact that a defendant may have been in a 'high position of authority is an insufficient basis for the imposition of personal liability' under § 1983") (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977)); Farid v. Goord, 200 F.Supp.2d 220, 235 (W.D.N.Y.2002) (dismissing claims of personal involvement against supervisory official who merely sent grievances "down the chain of command for investigation"). The fact that the plaintiff spoke directly with the supervisory officials, may not be sufficient personal involvement for the maintenance of a §1983 claim. Rosales v. Kikendall, 677 F.Supp.2d 643, 650 (W.D.N.Y. 2010)(Larimer, D.J.)(the fact that the plaintiff spoke directly to superintendent about alleged harassment that he was receiving from certain officers, and that superintendent took no action in response, failed to show superintendent's personal involvement in alleged constitutional violations, as required for § 1983 claim.).

The plaintiff has not demonstrated extraordinary circumstances which would entitle him to relief from the September 13, 2012 Order under Rule 60(b)(6). Jones continues to assert that Hopkins may be held liable simply because, as deputy Superintendent, he is responsible for the prison medical program. (Docket No. 22 at page 3). The fact that Hopkins holds this office, without more, is insufficient to establish the required personal involvement for §1983 liability. The fact that the plaintiff allegedly spoke with Hopkins, Griffin and Von Hagen may also be insufficient to establish personal responsibility, depending upon the timing and content of those discussions. Moreover, much of the information contained in the instant motion in support of the

8

claim that the Hopkins, Griffin and Von Hagen were personally involved in the alleged deprivations is not contained in the complaint. For example, with respect to Von Hagen, the complaint asserts that Jones wrote to Von Hagen (Docket No. 1 at page 27) but does not state that Von Hagen examined him.

The plaintiff's motion for relief under Rule 60(b)(6) should be denied. Notwithstanding, based upon this record, the Court cannot conclude that it would be futile for the plaintiff to attempt to allege facts sufficient to establish personal involvement by these defendants. Inasmuch as the plaintiff's claims against Hopkins, Griffin and Von Hagen were dismissed *sua sponte*, without affording the plaintiff an opportunity to file an amended complaint, the plaintiff should be afforded an opportunity to amend his complaint regarding the deliberate indifference claim against Hopkins, Griffin and Von Hagen. See Green v. County of Monroe, 423 Fed.Appx. 98 (2d. Cir. 2011)(As a preliminary matter, we "have frequently reiterated that '[s]ua sponte dismissal of pro se prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' " ... While we agree with the court that many of Appellant's claims in his original complaint were implausible, we think that the better course of action would have been for the court to allow Appellant to file an amended complaint so that he would have had the opportunity to plead additional allegations to support his claims."); Gardner v. McArdle, 461 Fed.Appx. 64 (2d. Cir. 2012)(plaintiff should be afforded opportunity to amend complaint in light of *sua sponte* dismissal).

It is recommended that the plaintiff's motion to reinstate the defendants be denied, but that the plaintiff be afforded 30 days to file an amended complaint regarding his deliberate indifference claim.

9

**Motion for a Preliminary Injunction**

The plaintiff also seeks a preliminary injunction requiring that he be sent to see a urologist. (Docket No. 27 at ¶25). Jones asserts that he developed an infection on his genitals that was not properly treated for approximately 80 days (December 10, 2010 to February 28, 2011) while he was incarcerated at Southport (Docket No. 27 at ¶ 2). The plaintiff states that subsequent to this period, after he was transferred to the Great Meadow facility, he received treatment and was sent to see a urologist who advised him that a circumcision would address some of the symptoms he experienced, but would not restore the loss of sensation he experienced. Jones declined to have the circumcision performed. (Docket No. 27 at ¶¶4-9). The plaintiff states that he was then given a medication that cleared up his infection, but did not address the loss of sensation. (Docket No. 27 at ¶12). Jones was allegedly transferred back to Southport prior to a follow-up appointment with the urologist. Subsequent to his return to Southport, he was seen by a Physician's Assistant ("P.A.") who advised him that he did not know if a request to see a urologist about the loss of sensation would be approved. (Docket No. 27 at ¶15). According to Jones, requests for authorization to send Jones to a specialist were denied on various occasions in November and December of 2011, and January of 2012. (Docket No. 27 at ¶¶16-18). Jones states that he has been in prison for 25 years and that he hopes "at some point" he would be able to go home and cultivate a relationship with a woman. He asserts that he is capable of having an erection, but that he would not be able to enjoy sex because of the loss of sensation he has experienced. (Docket No. 27 at ¶21).

The defendants have submitted the Declaration of Dr. Peter A. Braselmann who is

currently employed at the Elmira Correctional Facility. (Docket No. 34).[3] The plaintiff has been incarcerated at Elmira since March of 2012. Thus, none of the defendants are currently involved in Jones' medical treatment. Dr. Braselmann represents that the medical records, which are attached to his Declaration, reflect that Jones was seen by Dr. M. White, a Urologist, on June 21, 2011. Dr. White noted the plaintiff's history of balanitis with phimosis and prior attempts to treat unsuccessfully with ointments. Dr. White discussed the possibility of circumcision with Jones, but Jones declined that procedure. Dr. White recommended a Tramonalone cream and daily hygiene for the plaintiff. He indicated that he could follow-up in one year or as needed with a note: "as needed if no response to topical therapy." (Docket No. 34, Exhibit A, Bates No. 351). The medical records reflect that on July 25, 2011, Jones was seen by Dr. Thompson,[3] who further discussed the possibility of a circumcision with the plaintiff and prescribed Kenalog cream 1 %, a topical antifungal cream, twice a day. (Docket No. 34, Exhibit A, Bates No. 282). The plaintiff has acknowledged that the cream cleared his infection. (Docket No. 27 at ¶12). The medical records reflect that Jones was examined by Dr. Thompson on September 14, 2011 who noted that the plaintiff's fungal infection had cleared, but that the plaintiff complained of numbness in his foreskin. (Docket No. 34, Exhibit A, Bates No. 281). According Braselmann, the medical records reflect that the plaintiff was seen by medical personnel on October 18, 20, 22 and 30 of 2011 as well as November 3, 6, 7, 8, 14, 16, 21, 22, and 28 of 2011 and no complaints regarding his penis were noted (Docket No. 34 at ¶¶ 28- 30; Exhibit A, Bates Nos. 268-272; 274 - 277;

---

[3] This document was filed under seal due to the fact that it contains the plaintiff's medical records.

[3] Dr. Thompson's first name does not appear in the record.

279). Jones did complain about numbness in his foreskin on November 9 and 30 of 2011. (Docket No. 34 at ¶¶ 29-31; Exhibit A, Bates Nos. 267, 273). Dr. Braselmann states that the medical records further reflect that on January 18, 2012, the plaintiff inquired as to the status of his urology consult. At that exam he reported that his foreskin was still numb. (Docket No. 34, Exhibit A, Bates Nos. 376) According to Dr. Braselmann, since January 18, 2011, "the plaintiff has been seen regularly by the medical staff at Southport Correctional Facility and Elmira Correctional Facility, where he has been since March of 2012. ... During that time he has treated for back pain, allergy issues, and cardiac care, especially following a hospitalization in March of 2012 for his cardiac issues. During this time the plaintiff has not asked to be seen for complaints regarding his foreskin, nor has he complained about it when being seen for other issues. He has also not requested to be referred to a urologist, nor asked for a circumcision. (Docket No. 34 at ¶¶ 36-37; Exhibit A, Bates Nos. 352 - 375). Dr. Braselmann further stated: "Certainly with regard to my treatment of the plaintiff had I thought that a referral to a urologist was medically appropriate, I would have submitted such a request. Given that the plaintiff has had no complaints regarding his foreskin or penis since he arrived at Elmira, there was no reason to have done so. ... Should the plaintiff feel that he has problems with his foreskin, or any other medical issue, he should raise that issue with medical personnel at Elmira. If an examination and testing reveal that a referral to a urologist, or any other consultant, is medically appropriate, approval for such a referral would be requested. (Docket No. 34 at ¶¶ 39-40).

  A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." <u>Patton v. Dole</u>, 806 F.2d 24, 28 (2d Cir.1986). In most cases, the party seeking the injunction must show a threat of irreparable injury if the injunction is not granted and either

(1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. See Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir.2003); Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir.1996) (internal quotes omitted). With respect to a requested injunction for medical treatment, the plaintiff must establish both that his medical condition is "objectively serious," and that the defendants he seeks to hold liable acted with "deliberate indifference" to his medical needs. See Conti v. Goord, 59 Fed.Appx. 434 (2d. Cir. 2003); Brock v. Wright, 315 F.3d 158, 162 (2d Cir.2003).

The plaintiff has not demonstrated that he would suffer irreparable injury or that there is a probability that he would succeed on the merits of this claim. Initially, the plaintiff has not presented any authority suggesting that the loss of sensation or numbness in his penis rises to the level of a serious medical condition. Instead, it has been held that penis numbness, without more, is not a serious injury. See Box v. Roper, 2010 WL 1528532 (E.D.Mo.,2010)(Medication which causes plaintiff to be tired and have numbness in his penis is not a serious injury.). Dr. White suggested that the plaintiff be followed-up in one year or as needed if the topical cream was not effective. Such a recommendation does not suggest that the plaintiff's medical condition constituted a serious risk to his health. Indeed, the medical records reflect that the plaintiff has not complained of this condition to any of his health care providers since January of 2012 – *more than 20 months*. Further, although Jones wishes to see a urologist, the plaintiff has not identified any treatment that Dr. White or any other physician has suggested might be effective in relieving the numbness he experiences. To the contrary, the medical records reflect that the various treatments Jones discussed with Dr. White and Dr. Thompson would not have been effective in

reversing any loss of sensation he experiences. Although the plaintiff has opined that the numbness he is experiencing was "caused" by the delay in treating his infection between December 10, 2010 and February 28, 2011, the plaintiff has not presented any authority in support of his conclusion. Finally, none of the defendants in this case are currently providing medical care to the plaintiff.

Based on the above, it is recommended that the plaintiff's motion for a preliminary injunction be denied.

**Conclusion**

It is recommended that the defendants' respective motion to dismiss the plaintiff's due process claim against the Clinton defendants (Docket Nos. 12 & 19) be GRANTED; that the plaintiff's motion to reinstate the defendants (Docket No. 22) be DENIED, but that the plaintiff be afforded an opportunity to file an amended complaint; and that the plaintiff's motion for a preliminary injunction (Docket No. 26) be DENIED.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                  /s/ Hugh B. Scott
                                                 United States Magistrate Judge
                                                 Western District of New York

Buffalo, New York
September 18, 2013