UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM EDWARD JONES,

        Plaintiff,

     v.

C.O. TOMPKINS, et al.,

        Defendants.
_____

12-CV-57

**DECISION AND ORDER**

## <u>INTRODUCTION</u>

Plaintiff William Edward Jones ("Plaintiff") commenced this action <u>pro se</u> seeking damages pursuant to 42 U.S.C. § 1983 ("Section 1983") for deliberate indifference to his medical needs while he was incarcerated at Southport Correctional Facility ("Southport"). Dkt. #1.

Currently before the Court is the Defendants' Motion for Summary Judgment. Dkt. #67.

## <u>BACKGROUND</u>

The following facts are derived from the parties' submissions in support of and in opposition to the instant motions, including the Defendants' Statement of Undisputed Facts (Dkt. #67-2) and accompanying declarations and exhibits attached thereto; and the Plaintiff's Opposition to Defendants' Statement (Dkt. #77) and accompanying declarations and exhibits attached thereto. The facts are undisputed unless otherwise noted.

The Court, as it must, construes these facts in the light most favorable to Plaintiff, the non-moving party. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

## I.   Parties

At the time of the events alleged in the Complaint, Plaintiff was an inmate in the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), housed at Southport.

Plaintiff names the following Defendants: Wesley Canfield, physician ("Dr. Canfield"), Jeremy Clement, registered nurse ("Nurse Clement"), Mark DeLauro, registered nurse ("Nurse DeLauro"), Angela Gorg, registered nurse ("Nurse Gorg") and Jill Northrop, nurse practitioner ("Nurse Practitioner Northrop"). All of the Defendants were employed by Southport, with the exception of Nurse Practitioner Northrup, who was employed by Elmira Correctional Facility.

## II. Plaintiff's Medical Conditions

At some point in time, the tip of Plaintiff's left index finger had been severed and was surgically re-attached, resulting in nerve damage. When Plaintiff arrived at Southport, he was diabetic, had lower back pain, and multiple allergies.

### III. Medical Treatment, Fall, 2010

While at Southport, Dr. Canfield prescribed Plaintiff Ultram, a narcotic medication, to treat his back pain. Ultram is a high-demand drug in the prison setting and is prone to abuse. As a result, Plaintiff's Ultram had to be crushed, placed into an envelope, and dispensed by pouring into Plaintiff's hand under the observation of medical personnel. This method is referred to as Directly Observed Therapy ("DOT"), which is standard practice for DOCCS to prevent potential hoarding and/or trading of the medication by inmates.

On October 31, 2010, Plaintiff saw Nurse DeLauro on sick call. Nurse DeLauro noted that plaintiff had a history of diabetes. Dr. Canfield reviewed the medical notes and subsequently ordered a "control A diet." Def. Stmt. ¶¶27-28.

The following day, Nurse DeLauro saw Plaintiff and noted a swollen cyst under his left arm axillary area. A physician assistant prescribed antibiotics and warm soaks, and the cyst was to be monitored.

Also on November 1, Dr. Canfield reviewed Plaintiff's request for additional pain medication. The physician modified Plaintiff's Ultram prescription from once a day at bedtime to twice a day in the morning and evening.

On November 10, Plaintiff complained of lower back pain "all day long" until he received his evening Ultram dose. Dr. Canfield noted that Plaintiff's previous EMG and CT scan were within normal limits, and that the medication adjustment dated November 1, 2010, should have addressed Plaintiff's complaint of daytime pain.

The following day, on November 11, Plaintiff went to sick call again for his cyst, which at the time was swollen, but not red. He had finished the antibiotics.

Plaintiff was examined by Dr. Canfield on November 16, 2010, who noted a swollen left axilla which, upon palpation, revealed a deep tender soft mass. Plaintiff also had a small cyst on the left thigh scrotal area. Antibiotics were prescribed, and Dr. Canfield noted that the mass would be cultured if it broke, however the cyst would need to break naturally in order for it to be cultured. Def. Stmt. ¶¶42-49. Plaintiff states that the medical staff could have punctured the cyst for drainage and pain relief. Pl. Opp'n Stmt. ¶14.

Between November 16, 2010 and December 9, 2010, Plaintiff saw medical staff at Southport approximately eight times for treatment of the two cysts, redness and yeast-like areas on his penis, and hives and swollen areas on his neck and shoulders. During this time, Plaintiff's dosage of Ultram was increased,

4

and he was prescribed an anti-fungal cream for his penis. Despite Plaintiff's requests for the cysts to be cultured, the axillary cyst did not drain until December 6, 2010, and a culture was obtained the following day.

## IV.  December 10, 2010 Incident

On December 10, 2010, Nurse Clement was dispensing Plaintiff's medications, including Benadryl and Ultram, in a medication cup. According to Nurse Clement, Plaintiff accepted the medication, and placed the Benadryl on his desk. He then appeared to take the Benadryl, while pouring the Ultram into a white napkin on the floor. He then placed his hand to his mouth, drank water, and showed his mouth. Def. Stmt. ¶¶70-79.

Plaintiff testified that while the nurse was dispensing the Ultram, the medication cup bumped Plaintiff's left index finger. Due to nerve damage in his finger, Plaintiff "jumped," spilling the Ultram onto the floor. According to Plaintiff, Nurse Clement then forced him to "lick it off the floor." Pl. Dep. (Dkt. #67-3) at 25.

Nurse Clement's version of events is that he ordered Plaintiff to retrieve the Ultram from a napkin that was lying on the floor. Plaintiff then picked up the remnants of the Ultram and placed into his mouth, attempting to swallow it without

water, and proceeded to walk to the sink and spit into a cup. Def. Stmt. ¶81.

A corrections officer who accompanied Nurse Clement on his rounds wrote that Plaintiff "pulled out the pills and put them on his desk. He then dumped the powder meds on a napkin on the floor. Inmate Jones then acted like he was taking his meds to which [sic] he was not. RN Clement gave Jones two direct orders to give back the meds. Inmate Jones refused both times." Clement Decl. (Dkt. #67-5), Ex. B.

In Nurse Clement's view, Plaintiff was pretending to swallow his medication for the purposes of hoarding it. Def. Stmt. ¶85. Plaintiff claims that Nurse Clement was of a "sadistic character" and had a history for writing up false reports on inmates. Pl. Opp'n Stmt. ¶27, Pl. Dep. at 25.

After the incident, Nurse Clement contacted Dr. Canfield, who ordered that Plaintiff's medications be put on hold until the matter could be reviewed. Plaintiff did not receive his Ultram dose the following morning. According to Plaintiff, Nurse DeLauro informed him that his medication had been discontinued, stating, "I don't know who you pissed off, but I don't have any meds." Def. Stmt. ¶91. The medical records submitted do not reflect any interaction between Nurse DeLauro and Plaintiff on December 11, 2010.

On December 14, a physician assistant reviewed the medical records and discontinued Plaintiff's medications based on the events of December 10, 2010. Dr. Canfield and Nurse DeLauro attempted to discuss alternative pain medications with him, but Plaintiff refused.


## IV.  Medical Treatment, Winter, 2010-2011

On December 14, 2010, a follow-up evaluation of Plaintiff's left axillary cyst was requested. The next day, Plaintiff's sick call indicated that there was no further drainage in the area and no inflammation was noted. Plaintiff stated there was no change in the area of the cyst or the size of the swelling.

Plaintiff was seen again at sick call on December 24, 2010 for complaints regarding the cyst. No inflammation or drainage was noted, and the size of the cyst had not changed.

On December 27, Plaintiff saw Nurse DeLauro to request Ultram, and recounted the events of December 10. Nurse DeLauro noted no deficits in Plaintiff's activity, no complaints of pain, and observed that Plaintiff was sitting and standing without difficulty. Zimmermann Decl., Ex. B at 302. According to Plaintiff, he could not sit or stand. Pl. Opp'n ¶34. Plaintiff refused non-narcotic pain medication (Aspirin). Def. Stmt. ¶¶108-112.

Plaintiff was next seen at Southport by Nurse Gorg on January 17, 2011,[1] upon complaints of back pain and needing his toenails trimmed. He was placed on the callout list. The following day he was seen again by Nurse Gorg, complaining of lower back pain and hives. The nurse reported no acute distress, ambulation without difficulty, and that Plaintiff appeared to have full range of motion, although Plaintiff maintains he could not walk or sit up. Def. Stmt. ¶ 137; Pl. Opp'n Stmt. ¶44.  No hives or rashes were noted. Nurse Gorg again indicated that Plaintiff was on the callout list to see a physician or physician assistant.

On January 19, Plaintiff saw Nurse Gorg and requested renewal of Nortriptyline. She submitted the request to Dr. Canfield for review, who renewed the prescription with instructions that it be dispensed by DOT by a registered nurse for 180 days.

Plaintiff reported to sick call on January 21, 2011 with complaints of an occasional rash. Nurse Gorg observed what appeared to be hives on his left knee. Plaintiff reported no changes, no shortness of breath, and no difficulty swallowing.

---

[1] The gap in the Southport medical notes is attributed to Plaintiff's temporary stay at Upstate Correctional Facility during the first two weeks of January, 2011.

The issue was referred to a physician assistant, who prescribed hydrocortisone ointment.

On February 2, 2011, Plaintiff requested emergency sick call for severe hives without respiratory distress. Dr. Canfield ordered a steroid to be given immediately and to be directly observed. He also ordered Prednisone and Benadryl. Plaintiff testified that Prednisone controls his hives.

Between February 3 and February 14, Plaintiff was seen several times for gastric reflux, an ingrown toenail, and lower back pain. He was given over-the-counter Alamag, and was placed on the callout list for nail trimming. On two occasions he signed up for sick call, but refused to get out of bed or get dressed. Nurse Gorg advised Plaintiff follow-up as needed.

The outgoing draft notes dated February 14, 2011, indicate that Plaintiff had a prior negative tuberculosis test, had a normal chest x-ray from 1993, and normal lab results from 2009. Plaintiff's allergies were polyester, wool, shellfish, and penicillin. His follow-up needs were lower back pain and type 2 diabetes, and current medication was Nortriptyline. The following day he again signed up for sick call, but was not dressed and his light was not on.

Plaintiff was transferred to Great Meadow Correctional Facility on February 15, 2011.

Although defendant Northrop did not work at Southport during the period at issue and did not provide medical care to plaintiff during the period at issue, Plaintiff states that he received treatment from her. Def. Stmt. ¶¶179-80; Pl. Opp'n Stmt. ¶50.

## V.    Procedural History

Plaintiff filed the instant Complaint on January 3, 2012 (Dkt. #1) advancing multiple claims of error against various individuals at Southport, including Dr. Canfield and Nurses Clement, DeLauro, and Gorg. As relevant here, Plaintiff's second "claim" alleges that he was not seen at sick call despite multiple requests, that his prescriptions for Aspirin and allergy medications were insufficient, and that his narcotic pain medication was stopped as punishment by the medical staff. He further claims that he was not treated by medical staff for 78 days which resulted in severe pain and inability to walk due to hives, cysts, and back pain. Dkt. #1 at 25-31.

## STANDARDS OF LAW

### I.    Rule 56: Summary Judgment

Under Fed.R.Civ.P. 56, if there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

_Matsushita Electrical Industrial Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986). Initially, the movant bears the burden of demonstrating the absence of a genuine issue of material fact. _Adickes v. S.H. Kress and Co._, 398 U.S. 144, 157 (1970). This burden may be met by demonstrating that there is an absence of evidence to support the non-movant's case. _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). The non-movant then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 256 (1986)l. This requires the non-movant to make "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." _Celotex Corp._, 477 U.S. at 322.

In determining whether there are genuine issues of material fact, the reviewing court is "'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" _Johnson v. Killian_, 680 F.3d 234, 236 (2d Cir. 2012) (quoting _Terry v. Ashcroft_, 336 F.3d 128, 137 (2d Cir. 2003); internal quotation marks omitted in original); _see also Adickes_, 398 U.S. at 158–59. Nonetheless, the Court still must inquire whether "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party," _Anderson_, 477 U.S. at 248, and

may grant summary judgment if the non-movant's evidence is "merely colorable" or "is not significantly probative[.]" Id. at 249-50 (citations omitted). The same standards apply where, as here, the parties have filed cross-motions for summary judgment. Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citations omitted). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)). It is with these considerations in mind that the Court addresses the instant motion.

## II. Section 1983

A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges secured by the Constitution or federal laws. Annis v. Cnty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

In addition, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in

12

order to hold that defendant liable in his individual capacity under § 1983." Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); see also Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

## III. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Tramell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (citation omitted). "Punishment" encompasses deprivations imposed incident to imprisonment. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). Additionally, the Eighth Amendment dictates that prisoners are entitled to adequate medical care. See id. at 104 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]' proscribed by the Eighth Amendment.") (internal quotation omitted).

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference" to his "serious medical needs." Estelle, 429 U.S. at 104. Such a claim thus contains two elements: (1) the plaintiff must have a serious medical

condition, and (2) the prison officials must have acted with deliberate indifference in regard to that condition. Farmer v. Brennan, 511 U.S. 825, 834-35 (1994); see also, e.g., Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The first component of the test considers, from an objective standpoint, whether the medical condition presents "a condition of urgency that may result in degeneration or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Relevant factors include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. (quotation omitted).

The second component asks whether the defendants, subjectively speaking, acted with the requisite culpable mental state, something akin to criminal recklessness. Wilson v. Seiter, 501 U.S. 294, 301-03 (1991); see also Hathaway, 37 F.3d at 66. "Deliberate indifference" requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Significantly, simple

medical malpractice is insufficient to support an Eighth Amendment claim, unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance, 143 F.3d at 702 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). Finally, it is well-settled that "[m]ere disagreement over proper treatment does not create a constitutional claim," so long as the treatment was adequate. Chance, 143 F.3d at 703.

## DISCUSSION

Defendants move for summary judgment on the grounds that Plaintiff fails to establish the elements of a deliberate indifference claim against Dr. Canfield and Nurses Clement, DeLauro, and Gorg; and that he fails to establish the personal involvement of Nurse Practitioner Northrop. Def. Mem. (Dkt. #67-1) at 5-12. The Court has considered these arguments and those presented in the Plaintiff's opposition (Dkt. #77) and the reply papers (Dkt. ##81, 88). For the reasons that follow, the Defendants' motion for summary judgment is granted.

## I.   Deliberate Indifference to Plaintiff's Medical   Needs

Defendants primarily challenge Plaintiff's ability to establish the subjective component of the deliberate indifference standard with respect to the Southport medical staff defendants. It is worth noting, however, that in

15

responding to Defendants' arguments, Plaintiff has introduced additional claims in his opposition papers—namely, that the inadequate care related to two conditions not alleged in the Complaint—his diabetes and an ingrown toenail. Pl. Mem. at 3-10; Pl. Decl. ¶¶16, 17, 59, 89, 90. It is improper for Plaintiff to allege new bases for a deliberate indifference claim for the first time in opposition to a motion for summary judgment. See Scott v. City of NY Dep't of Corr., 641 F.Supp.2d 211, 229 (S.D.N.Y. 2009), aff'd, 445 Fed.Appx. 389 (2d Cir. 2011) (same); Jackson v. Onondaga Cnty., 549 F.Supp.2d 204, 219 (N.D.N.Y. 2008) (same). The Court therefore disregards Plaintiff's newly-asserted grounds. See, e.g., Heletsi v. Lufthansa German Airlines, Inc., No. 99-CV-4739, 2001 WL 1646518, at *1 n. 1 (E.D.N.Y. Dec. 18, 2001) (disregarding new allegation of fact raised in opposing memorandum; noting that "[a] party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment.").

The focus of Plaintiff's initial Complaint is his allegation regarding inadequate treatment for lower back pain, cysts, and various infections and allergies by medical staff at Southport. The Court deals with each of Plaintiff's maladies in turn.

A.   <u>Lower Back Pain</u>

Plaintiff first complains that the medical staff at Southport should have given him additional quantities of the narcotic drug Ultram, and did not do so because "they said that the Plaintiff's pain did not exist . . . ." Pl. Mem. at 5-6. He further states that the Southport policy of crushing the Ultram prior to dispensing is "ridiculous," and that he had not encountered the same procedure in other correctional facilities. <u>Id.</u>

Assuming, for purposes of this motion that Plaintiff's low back pain was a serious medical need,[2] his contention that Defendants failed to treat this condition is belied by the record. Pl. Mem. at 5, 12.

Following a lower extremity EMG (which revealed no radiculopathy, compression, or spinal nerve root damage), Dr. Canfield prescribed Ultram to treat Plaintiff's complaints of pain. The medical notes indicate that by November 1, 2010, Dr.

---

[2] The record suggests that Plaintiff's back pain was not a serious medical need during his stay at Southport, based upon his examination records indicating normal range of movement, an unremarkable EMG, no acute distress, and no changes after the narcotic prescription being discontinued. Zimmermann Decl., Ex. B; <u>see</u> <u>Martinez v. Aycock-West</u>, 12-CV-4574, 2016 WL 407294, at *6 (S.D.N.Y. Feb. 1, 2016) (plaintiff's injuries not sufficiently serious where injury report indicated, among other things, normal ambulation and treatment with over-the-counter medication and injections); <u>see generally</u> <u>Chance</u>, 143 F.3d at 702 (serious medical need one resulting in "death, degeneration, or extreme pain").

Canfield increased Plaintiff's Ultram dosage, and also prescribed a non-narcotic pain reliever, Nortriptyline. After the Ultram was discontinued due to the December 10 incident, Dr. Canfield continued to prescribe Plaintiff Nortriptyline based on his complaints of pain.

With regard to the December 10 incident, Plaintiff fails to create a question of fact by denying that he was attempting to divert a narcotic. Plaintiff admits that the medication spilled onto the floor. Pl. Opp'n Stmt. ¶¶15-23. Under these circumstances, it was not unreasonable for Nurse Clement to believe that Plaintiff sought to hoard the medication and subsequently notify Dr. Canfield. Neither Nurse Clement's decision to report the incident to Dr. Canfield nor Dr. Canfield's action in discontinuing the Ultram prescription constitutes deliberate indifference. See Josey v. Rock, 2013 WL 1500435, at *9 (N.D.N.Y. Mar. 19, 2013) (finding no deliberate indifference where doctors discontinued Ultram prescription based on their concerns that plaintiff was seeking Ultram for non-medical reasons and Ultram was not the best treatment for patient's pain); see also Cole v. Pang Lay Kooi, No. 11-CV-0004, 2013 WL 4026842, at *5 (N.D.N.Y. Aug. 6, 2013) (finding a lack of deliberate indifference where prisoner's Ultram prescription was discontinued after he was caught hoarding doses of the drug).

After December 10, 2010, medical staff attempted to address Plaintiff's pain by alternative treatments, such as over-the-counter medication, but Plaintiff, by his own terms, did not fully cooperate in this regard. Pl. Opp'n Stmt. ¶31. Simply because Plaintiff desired a narcotic pain medication for his condition does not establish that Dr. Canfield was deliberately indifferent to Plaintiff's medical needs. See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (dismissing plaintiff's claim that prescription of Motrin was insufficient for his pain management because "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment"); see also generally Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (The fact that a plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation); see also, e.g., Drayton v. Ozmint, 10-cv-2079, 2011 WL 7395092, at *9 (D.S.C. Dec. 28, 2011) (stating that "[w]hile Plaintiff may have desired stronger pain medication prior to when he actually received it, such disagreement with his treatment plan does not constitute deliberate indifference," and noting that "Plaintiff may disagree with the medical care he received, but such disagreement alone is insufficient to establish a claim for deliberate indifference").

19

B.   <u>Axillary Left Cyst</u>

Plaintiff contends that Defendants should have punctured his cyst rather than treating it with antibiotics. Pl. Opp'n Stmt. ¶14; Pl. Decl. ¶24. He goes on to state that the cyst resulted in "extreme pain," that the Southport medical staff claimed "that there was nothing they could do," and that he did not receive "prompt effective care." Pl. Decl. ¶¶22-25. Again, assuming that the cyst was a serious medical need, Plaintiff's claim that he was not treated for the cyst draws no support from the summary judgment record.

Plaintiff was seen by medical staff at Southport for treatment of the cyst multiple times. The first time, on November 1, 2010, Plaintiff was promptly given an antibiotic. Zimmermann Decl., Ex. B at 301. Approximately two weeks later, the cyst was still tender, and another antibiotic was ordered. <u>Id.</u> at 309. Plaintiff was advised to let the cyst drain on its own. When it did not, he became "upset" that the cyst had not yet been cultured. <u>Id.</u> at 308-310. The cyst did not rupture on its own until December 6, 2010, after which it was immediately cultured. <u>Id.</u> at 306-07. Plaintiff therefore cannot in good faith allege the absence of medical treatment for his axillary cyst. Even if Dr. Canfield's regimen of antibiotics was

unsuccessful, as Plaintiff now suggests, it still does not establish the requisite state of mind required for Plaintiff's claim. See Ramos v. Artuz, No. 00 Civ. 0149, 2003 WL 342347, at *9 (S.D.N.Y. Feb. 14, 2003) (indicating that an unsuccessful course of treatment does not support a finding of deliberate indifference); See, e.g., Armour v. Herman, No. 05CV295, 2005 WL 2977761, at *3 (N.D. Ind. Nov. 4, 2005) ("The Eighth Amendment does not require medical success . . . .").

Moreover, Plaintiff's desire to have the cyst lanced, as opposed to self-draining in conjunction with antibiotics, is simply a disagreement with the prescribed medical treatment, and does not amount to deliberate indifference. See Jandres v. Armor Health Care Inc., 12-CV-3132, 2014 WL 1330655, at *5 (E.D.N.Y. Mar. 31, 2014) (dismissing deliberate indifference claims because "a disagreement in treatment, [ ] does not raise a constitutional violation").

C.   Fungal Infection/Balanitis

Plaintiff next argues that the Defendants' treatment of the fungal infection of his penis was immediate, but ineffective. Pl. Decl. ¶65. The medical record indicates that Plaintiff was seen by medical staff at Southport on November 30, 2010 upon complaints of redness and a white, stringy, yeast-like substance under the foreskin and head of his penis. He was treated with an anti-fungal cream for 14 days. Zimmermann Decl., Ex. B at 307-

21

08.    There  are  no  other  reports  of  similar  complaints  by
Plaintiff  while  at  Southport.[3]  To  the  extent  Plaintiff  claims
that  the  anti-fungal  creams  were  ineffective,  this  falls  short
of  establishing  that  Defendants  were  aware  of  and  ignored  an
obvious  and  serious  need  for  medical  treatment.  Although
Plaintiff  now  states  that  he  now  suffers  anorgasmia  as  a  result
of  the  infection,  he  produces  no  evidence  linking  the
conservative  treatment  measures  at  Southport  to  his  present
condition.[4]  Even  if  medical  staff  under-estimated  the  severity  of
Plaintiff's  balanitis,  negligence  alone  does  not  rise  to  the
level  of  deliberate  indifference  and  is  not  cognizable  under  §
1983.  See  Martinez v. Mancusi,  443 F.2d 921, 923 (2d Cir. 1970).

    D.    Hives

    Plaintiff  contends  that  medication  for  his  hives  was
discontinued  as  punishment  for  the  December  10  incident,  which
resulted  in  itching,  burning,  and  loss  of  sleep.  Pl. Mem. at 8-
9.

    It  is  undisputed  that  Plaintiff  received  treatment  for
hives  at  least  five  times  between  December,  2010,  and  February,

---

[3] Plaintiff also complained of jock-itch like symptoms in January
of 2011 while he was temporarily housed at Upstate Correctional
Facility. There, he was again prescribed an anti-fungal cream,
which he told medical staff was "helpful." Zimmermann Decl., Ex.
B at 298.

[4] Indeed, Plaintiff submits a urological consultation report
dated May 14, 2014 indicating that anorgasmia could be
attributed to "multiple" causes, including diabetes and
psychological causes. Pl. Sur-Reply (Dkt. #88), Ex. A.

2011 while incarcerated at Southport. He was treated with Benadryl or equivalent each time. Zimmermann Decl., Ex. B at 298-300, 306. It is further undisputed that on February 2, 2011, Plaintiff was seen at emergency sick call for severe hives, and was given an immediate steroid under supervision, along with prescriptions for Prednisone and Benadryl that Plaintiff could administer himself. Pl. Dep. at 46-47.

Further undermining Plaintiff's claim that he did not receive "prompt effective care," or any treatment at all after December 10, 2010, see Pl. Decl. ¶¶25-26, is that on multiple occasions, Plaintiff failed to follow sick call protocol. On October 31, 2010, February 3, 2011, February 10, 2011, and February 15, 2011, Plaintiff either refused to get out of bed, refused to get dressed, or his light was not on. Def. Stmt. ¶¶25, 150, 160, 166. See, e.g., Hardy v. Diaz, No. 08-CV-1352 2010 WL 1633379, at *6 n. 12 (N.D.N.Y. Mar. 30, 2010) (noting that skipping medical appointments and failing to comply with treatment directions can undermine an Eighth Amendment medical indifference claim). Moreover, Plaintiff was incarcerated in Upstate Correctional Facility between January 6 and January 13, 2011, so there can be no allegation of deficient medical treatment at Southport during that time. For these reasons, Plaintiff fails to establish the subjective component of his

deliberate indifference claim arising out of his treatment, or lack thereof, for hives.

In summary, Plaintiff's claims are unsupported by the record and he fails to raise a genuine issue of material fact as to whether any of the medical staff at Southport acted with a sufficiently culpable state of mind to be held liable for deliberate indifference. Defendants Dr. Canfield and Nurses Clement, DeLauro, and Gorg are therefore entitled to summary judgment.

## II. Personal Involvement

In his Complaint, Plaintiff names Nurse Practitioner Northrup and alleges that she was a sick call nurse at Southport during the relevant time period. Dkt. #1 at 27. The only apparent conduct Nurse Practitioner Northrup engaged in, according to Plaintiff, was "stop[pping] at my cell long enough to tell me that I was on the burn, and could not receive sick call." Id.

"[I]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (citation and quotation marks omitted).

Although Plaintiff maintains that Nurse Practitioner Northrup was an employee of Southport, Pl. Opp'n Stmt. ¶50,

24

there is no evidence in the record to indicate that Nurse Practitioner Northrup was at Southport during the relevant time period, or that she treated Plaintiff during the relevant time period. Northrop Decl. (Dkt. #67-7) ¶¶6-7. Nurse Practitioner Northrup must therefore be dismissed from the second claim in the Complaint for lack of personal involvement, and summary judgment is warranted with regard to Nurse Practitioner Northrup.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Dkt. #67) is GRANTED in its entirety. The Clerk is directed to enter judgment in favor of Defendants and to close this case.

**SO ORDERED.**

Dated: August 10, 2016
      Rochester, New York

                              S/Michael A. Telesca

                              _____
                              MICHAEL A. TELESCA
                              UNITED STATES DISTRICT JUDGE